McGuire *v.* Bosworth.

---

## STOCKTON *v.* BRISCOE.

1  1  249
52 2097

1   249
125  161
125  164

One in possession of land purchased at a succession sale, whose title has been duly register-
ed, cannot be affected by the fact that the sale to the deceased, made *sous seing privé*, by
a party then in possession, was never registered.   *Per Curium :* The object of the registry
laws is to make apparent the ownership of property, and whenever such ownership ap-
pears on the public records, by proper titles, that object is attained ; notice is thereby given,
and no person can be deceived.

APPEAL from the District Court of Madison, *Willson,* J.    *Stockton, pro se,*
cited Civil Code, art. 2417.  Stat. 20th March, 1827, s. 5 (B. & C.'s Dig.
603).  2 Robinson, 75–8.  3 Rob. 378.    *Brassac* v. *Ducros,* 4 Rob. 335.   3
Rob. 161.   1 Grenier, Hypoth. p. 100.

*Steele* and *Frost,* on the same side.

*Dunlap* and *Snyder,* for the appellant, cited 5 Mart. N. S. 147, 423, 696.   6
Ibid. N. S. 431, 796.   7 Ibid. N. S. 579.   7 La. 553.  2 Rob. 72.

The judgment of the court was pronounced by

EUSTIS, C. J.   Th·. plaintiff claims to be the owner of an undivided half of
a tract of land, in the parish of Madison, described in the petition, by virtue of a
sheriff's sale made of the property of *John S. Gooch,* on the 23d *day of October,*
1841, by virtue of an execution issued on a judgment rendered in a suit of the
plaintiff against *John S. Gooch,* instituted in the court of the ninth judicial dis-
trict.   The suit was commenced by attachment against *Gooch,* an absentee, who
appeared and pleaded ; and at the sheriff's sale the plaintiff became the purcha-
ser of the land in question.

The defendant, who was the co-proprietor of *Gooch,* being the owner of the
other half of the tract of land, under a title which is undisputed, is the defen-
dant in possession ; and to the petition of the plaintiff answers that, he is the
owner of the land claimed in the petition.   He derives his title from the suc-
cession of *Charles Johnson,* under a probate sale of the effects of his succession,
made *on the 20th of June,* 1840.  *Charles Johnson* purchased *Gooch's* interest in
the land, by an act under private signature from Gooch himself, dated the 1st of
March, 1836.   There is no question made as to *Gooch's* possession, which was
complete, in the person of his co-proprietor, until *Johnson's* purchase, in March,
1836, since which time the possession of *Johnson* and of the defendant has been
public and uninterrupted.   *Gooch* never resided in Louisiana.   The *sous seing
privé* from *Gooch* to *Johnson,* never was recorded.

The plaintiff bases his right to attach, and hold under the sheriff's sale, the
property in question, on the non-recording of this instrument, under several de-
cisions of the late Supreme Court.  *Brassac* v. *Ducros,* 4 Rob. 339, is the
most recent case, and by far the most favorable to his view of the subject, of·
those cited by him.

The distinction between those cases and this, is obvious.   In this case the

STOCKTON
v.
BRISCOE.

property is not in the possession of the party under an unrecorded title, but in that of a *bond fide* purchaser at a judicial sale, whose title stands upon the public records. *Briscoe's* title is recorded, and was recorded before the institution of the suit by the plaintiff under which he purchased, which was commenced in Dec. 1840. It may be conceded that, under the decisions cited, the *sous seing privé* had no effect between the parties, adversely to creditors; but they gave it effect. They permitted *Johnson* publicly to hold the property, without interruption, until his death, under the act under private signature, and thus, by their own act, gave it effect. At the public sale of the effects of his succession it was adjudicated to the defendant, who paid for it. The plaintiff might, or not, have taken advantage of the non-recording when the property belonged to the party, who may be considered in default in not recording his title; but to permit him to disturb a *bond fide* purchaser, who holds under a recorded title, would be pushing the registry laws beyond their policy and intendment. The object of these laws is, to make apparent the ownership of property, and whenever the ownership appears on the public records by proper titles, that object is attained; *notice is thereby given*, and no person can be deceived as to who is the owner. There is neither reason, nor sound policy in the contrary interpretation. We determine this case on this point alone, without reference to the doctrine supposed to be established by the decisions cited. We have not the opportunity at present to examine them with that care, which would enable us to come to any conclusion as to their extent and operation, as rules on this important subject. It having been admitted that, *Briscoe* purchased at a judicial sale of the property of the succession of *Johnson*, we assume that it was regularly made, and that in relation to it *omnia rité acta esse*.

The judgment is reversed, and judgment rendered for the defendant, with costs in both courts.

SLIDELL, J. dissenting. *The question involved in this case is one of great public interest, and it is a source of very sincere regret to me that, in consequence of the approaching close of the term, and my restricted opportunities of investigation, I have not been able to examine it as thoroughly as its importance deserves. Dissenting from the opinion of the majority of the bench, it is proper that I should give, however succinctly, the reasons of my opinion.*

The case is put by the defendant's counsel on the ground of possession, by the vendee *Johnson*, and by *Briscoe* claiming under him, before the levy of the plaintiff's attachment. It is put by the majority of the court mainly on the ground that, though the act under private signature from *Gooch* to *Johnson* was never registered, yet the adjudication from *Johnson's* succession to *Briscoe* was registered anterior to the attachment, by virtue of which, and a recorded sheriff's sale thereunder, *Stockton* now claims to hold. I will proceed to consider the defendant's case on both grounds, first observing, in order to simplify and disembarrass the question that, it is not shown by the record, nor even pretended by the defendant, that *Stockton*, prior to the levy of his attachment, had actual notice, or knowledge of the sale from *Gooch* to *Johnson*, and that the title of *Gooch*, as derived jointly with the defendant from *Sims*, is acknowledged by the answer.

The effect of a sale of land by act under private signature, is regulated by article 2417 of the Civil Code, which is in these words: " The sale of any immovable or slaves, made under private signature, shall have effect against the creditors of the parties, and against third persons in general, only from the day such

sale was registered in the office of a notary, *and* the actual delivery of the things    Stockton
sold took place.   But this defect of registering shall not be pleaded between the         *v.*
parties who shall have contracted in such act, their heirs, or assigns, who are           Briscoe.
as effectually barred by a sale made under private signature, as if it were by an
authentic act."

Before considering the force of this provision, it is proper to notice a discre-
pancy between article 2417, which is found under the general title of Sale, and
under the particular head of " The nature and form of the contract of Sale,"
and article 2242, contained in the title of conventional obligations, which is in
these words : " Sales, or exchanges, of real property or slaves, by instruments
made under private signature, are valid against *bonâ fide* purchasers and credi-
tors, only from the day on which they are registered in the office of a notary,
or from the time of the actual delivery of the thing sold or exchanged."   Arti-
cle 2242, gives such a sale effect from the date of registry, *or* from the actual
delivery, while article 2417 requires *both.*

If article 2242 conflicts with article 2417, so far as the latter requires both re-
gistry and actual delivery, the former must give way; for article 1771 declares
that " certain contracts are regulated by rules, which are established in the
parts of the Code which treat of those contracts ;" and article 2413, with which
the title of Sale commences, declares that, " in all cases, *where no special pro-
vision is made under the present title*, the contract of sale is subjected to the ge-
neral rules established under the title of Conventional Obligations."

Considering then article 2417, as the article which defines the law on this
subject, we find that its declaration is positive and unequivocal that, in case of
sales of land by a private writing, *notarial registry and actual delivery* are *both*
necessary, against *creditors* and *third persons in general.*   If any thing be neces-
sary to elucidate language so plain and unequivocal as the legislature has here
used, it may be found in the pre-existing legislation on the same subject matter.
The Code of 1808, in treating of acts under private signature, has the following
provisions : "Acts under private signature, expressing a sale or exchange of im-
moveables or slaves, must be acknowledged and registered in the office of a no-
tary public, six days from their date, if they be passed in the city of New Or
leans, or within its liberties ; and within ten days from their date, if they be
passed without the city and its liberties, in any part of the territory.   When
acts under private signature, expressing a sale or exchange of immovable pro-
perty or slaves, have not been registered within the above mentioned time, they
shall have effect against third persons only from the time of their being register-
ed ; but the want, or delay, of registering cannot be pleaded by any one of the
contracting parties, their heirs, or assigns."   Code of 1808, p. 306, art. 228.
Again, under the head of "The nature and form of the contract of Sale," is the
following : " The sale of any immovable or slaves, made under private signa-
ture, shall have effect to the prejudice of persons not parties to it, only from the
day the said sale was registered in the office of a notary.   Nevertheless, if that
registering is duly made, to wit, within six days from the date of the act for
sales made in the parish of New Orleans, and within ten days from said date
for sales made in the other parishes of this territory, the sale so registered shall
have effect against third persons, and will bar them even, from the date of the
act under private signature ; but this defect of registering shall not be pleaded
between the parties who shall have contracted in said act, their heirs or assigns,
who are as effectually bound by a sale made under private signature as if it was
by an authentic act."   Code of 1808, p. 344, art. 3.

It will be observed that there are two material changes in the legislation on the subject. The present Code introduces the expression "*creditors*," and adds the further requisite of actual delivery. On an examination of the cases decided by the former Supreme Court, arising under the Code of 1808, it will be found that, they gave great weight to the execution of the contract by the parties, by the delivery of possession, and its open and unequivocal enjoyment by the vendee. See 6 Mart. N. S. 431. 7 Ib. N. S. 580. 4 Ib. N. S. 278. 5 Ib. N. S. 425. 2 N. S. 171. In the case of *De Flechier* v. *Degruys*, 5 Mart. N. S. 425, Judge Matthews, referring to the cases in 2 and 4 N. S. expressly says : " In both these cases it is seen that the validity of the deeds under private signature, was mainly supported in consequence of the real delivery of the thing sold to the purchaser, and his actual possession under the private act of sale." I cannot suppose that learned bench would have so decided in a case arising under our present Code, when registry and actual delivery are both expressly required.

In one of the cases cited, and which arose under the old Code, the court referred to the new Code, as sanctioning by positive enactment, the rule which they recognised that, possession cured the neglect of registry. But the court misread the language of article 2417, supposing the expression to be " *or* actual delivery." It it will be found that, in some of our sister States, where the registry system has been adopted, possession by the vendee, who has not recorded his title, has been considered constructive notice against a subsequent purchaser; an opinion, however, which has been doubted,, as breaking in upon the policy of the registry acts. But, under our Code, I conceive that we are positively forbidden to regard possession by the vendee as, *per se*, constructive notice of divestiture of title from the grantor by private act unregistered, because the legislature has positively required registration as well as possession. A contrary interpretation would be utterly at variance with this double requisition. These provisions of our written law are an inovation upon the ancient principles of jurisprudence, by which delivery perfected the sale against third persons—*traditionibus, non pactis, dominia transferunter*—and though such a rule may have accorded with the simplicity of an earlier age, it may well have been considered that public and recorded evidence was necessary for a more advanced state of society; for it is obvious that, mere tradition and possession are not inconsistent with title in the party making the tradition; the party receiving it may hold as lessee, or as agent, &c.; and to remove this uncertainty as to third persons, and to give publicity to the real agreement of the parties, the requisite of public registry was added to that of delivery. In the very case before us, the possession of *Briscoe* was not inconsistent with title in *Gooch*, for *Briscoe* was the co-purchaser with *Gooch* in the notarial act of purchase from *Sims*, under which both plaintiff and defendant alike claim. What would be the effect of constructive notice founded upon other circumstances besides actual delivery, it would be foreign to the present case to inquire, no such circumstances having been proved.

Considering then that an unregistered act under private signature, although accompanied by actual delivery and possession, cannot have effect, against a creditor buying in good faith and without notice, upon the property so sold, I now pass to a brief consideration of the effect of registry of the probate sale to *Briscoe* by the succession of *Johnson*, which is the ground upon which the decision of the court is based.

*Johnson*, under whom *Briscoe* claims, was guilty of *laches* in not registering his title from *Gooch*. This *laches* attached to *Briscoe*, who claims through him. Has it been cured by the registry of the adjudication to him? It is said, in the opinion of the court, that *Briscoe's* title was thus spread on the public records, nd gave legal notice to *Stockton* that the title was in him. Taking this registry, in its strongest sense, it does not show a divestiture of *Gooch's* title, but of *Johnson's*. Whence *Johnson* derived title, that record would not show; for it is not proved that the deed to *Briscoe* contained a recital of the origin of *John- son's* title. It would exhibit an adverse title derived from some source, and existing at the date of the attachment; but would not be inconsistent with an undivested title in *Gooch*. This however is not the most satisfactory light in which to regard this matter, for, if *Stockton* be considered as legally bound to take notice of the registry of the deed from *Johnson's* succession to *Briscoe*, it might perhaps be said that this was sufficient to put him on inquiry, and affect the good faith of his proceedings. But, in my opinion, a party, purchaser, or seizing creditor, having no actual notice, is not to be considered as affected with legal notice, of such a registry. The public records are open to his investigation; but, in my opinion, he is not bound to search them indiscriminately, and inspect every act there registered, to ascertain if some person, *other than his debtor or vendor*, has alienated the land which he desires to seize or purchase. He is bound, I conceive, to search in his debtor's name, and no further. A contrary doctrine would involve us in results which would make the offices of registry a trap, and their examination impracticable. By the act of 1810, (which is regarded as still in force, 11 La. 345—3. Rob. 161—Bullard & Curry's Digest, p. 595), requiring notarial acts concerning immovable property to be recorded in the office of the parish judge of the parish where the immovable property is situated, it is made the duty of the parish judge to give certificates of non-alienation, and the like duty is imposed on the register at New Orleans. Acts of 1827 and 1828, B. & C.'s Dig. 604, 605. If such a search is to cover all the records of the office, in a populous parish, as for example, Jefferson, or New Orleans, the labor of weeks would not accomplish one certificate.

The effect of the registry of the probate sale to *Briscoe* was, in my opinion, only to bar future purchasers and creditors claiming under *Johnson's* succession, and could not affect *bonâ fide* vendees, or seizing creditors, of *Gooch*.

I have not found in the digest of the decisions of other courts in this country, so far as I have been able to examine them, a single case which would sustain the title of *Briscoe*, upon the ground that the registry of the sale by *Johnson's* succession supplied the neglect of the registry of the sale to *Johnson* by *Gooch*. But I have found a case which is directly in point in the plaintiff's favor, (and even goes beyond it,) so far as I can judge from the digested note, the case itself not being before me. It is this: A gave a deed for a lot of land to B which was never registered, and B conveyed the same to C by deed which was registered; after which B gave up to A the deed he had received from him, and it was thereupon destroyed. A then conveyed to D, who knew of the fraudulent cancellation of A's first deed, and the latter conveyed to E, a purchaser for a valuable consideration, without notice of the fraud. *Held*, that E was entitled to hold against C. *Knox* v. *Silloway*, 1 Fairf. 201.

In conclusion, I would observe that I do not consider that, either under article 2417, or the uniform and well settled jurisprudence of this State, any dis-

STOCKTON
v.
BRISCOE.

tinction is made between an attaching or seizing creditor, and a purchaser. The Code covers both expressly, and the uniform current of decisions for many years has been that, where the debtor may sell, a creditor may attach.

It is obvious that there may be individual hardship in the interpretation, which, in my opinion, is to be given to our laws concerning registry; but considerations of the general good dictated these stringent innovations upon the ancient jurisprudence, and, even if they be unwise, they must be carried out, however harshly they may operate in particular cases. It is with regret that I feel myself bound, according to my interpretation of our registry laws, to dissent from the decree of the court sustaining the defendant's title. All the natural equity of the case is clearly in his favor.

For the above reasons, I think the judgment of the court below should be affirmed.