## HENRY BUCHANAN *v.* H. R. MORGAN et al.

J sold lots to W, who recorded his deed. W resold to J, *who did not record his deed.* J, several years afterwards, sold the lots to H, who sold them to T, who sold them to plaintiff, who paid taxes upon them, and assumed in every respect, the responsibilities of possession and ownership. The titles of H, of T, and of plaintiff, were duly recorded. The defendant seized the lots to satisfy a judgment obtained against W, after the plaintiff had acquired title. Plaintiff enjoined the sale. *Held:* The failure of J to record the reconveyance to him, was cured by the subsequent conveyances and possession under them; and the plaintiff's title was valid against the creditors of the original owner, W.

APPEAL from the District Court of the parish of Jefferson, *Clark,* J. *Wolfe* and *Singleton,* for plaintiff.

*Durant* and *Horner,* for defendants. By the act of March 25th, 1810, chapter 25th, section 7, it is "provided that no notarial act concerning immovable property, shall have any effect against third parties, until the same shall have been recorded in the office of the judge of the parish in which such immovable property is situated." Bullard's Digest, p. 596. This law is not repealed.

*Carraby* v. *Desmarre and the Sheriff,* 7 M. N. S. 661. *Gravier* v. *Barron et al.,* 4 L. R. 239.

By the act of 1st June, 1846, (Session Acts, p. 71,) the parish recorder is register of conveyances, and exercises all the powers, and performs all the duties that appertain to public notaries in general, and to the parish judges when acting in the capacity of public notaries. Sections 1 and 3 of the act quoted.

The law, then, being plain, clear, and indisputable, it follows, that as to *Henry R. Morgan* and the sheriff, the defendants herein, the act of sale from *Albert Wintercast,* of the 19th June, 1844, has no effect, because it was not registered in the office of the register of conveyances, until long after the property had been seized by *Morgan* on his execution against *Wintercast.* See, also *Hagan* v. *Williams,* 2 L. R. 122. *McManus* v. *Jewett,* 6 L. R. 531. *Mary* v. *Lampré,* 6 R. R. 314. *Crear* v. *Sowles,* 2 Ann. 598. *Tulane* v. *Levinson,* 2 Ann. 787. *Tate* v. *Williams,* 2 Ann. 868. *Stockton* v. *Craddick,* 4 Ann. 286. *Campbell* v. *Slidell,* 5 Ann. 274.

By the court: *(Slidell,* J., dissenting.)

EUSTIS, C. J. The plaintiff obtained an injunction against the sale of two certain lots, situate in the former Nun's faubourg, in the parish of Jefferson, which had been seized under an execution against *Albert Wintercast.*

The district court maintained the injunction, decreeing the lots to belong to the plaintiff, and not to be subject to the judgment against *Wintercast*. The defendant, who is the judgment creditor of *Wintercast*, has taken this appeal.

BUCHANAN
*v.*
MORGAN.

On the 3d of October, 1843, *O. P. Jackson* sold the lots to *Wintercast*, by public act, which was duly recorded. On the 19th of June, 1844, *Wintercast* reconveyed the lots to his vendor, *Jackson*, by public act, which was not recorded. On the 14th of December, 1848, *Jackson* conveyed the lots to *Hyde*. *Hyde* conveyed them to *Thomas*, and *Thomas* to the plaintiff. These three conveyances from *Jackson* to *Hyde*, *Hyde* to *Thomas*, and *Thomas* to the plaintiff, purport to be sales for a valuable consideration, and were by public act duly recorded in the parish of Jefferson.

The ground, on which it is contended the lots are subject to the judgment and execution against *Wintercast*, is, that the act of sale from *Wintercast* to *Jackson*, was never recorded as required by law. The district judge was of opinion, that this defect was cured by the registy of the subsequent acts, and the possession under them; and on the authority of the case of *Stockton* v. *Briscoe*, 1 Ann. 249, held the plaintiff's title to be valid against the creditors of the original owner, *Wintercast*.

The judgment under which it is attempted to affect the property in the hands of the plaintiff, was not rendered until April, 1851; the debt in which it was rendered, only originating in September previous, in the city of New York. By the act from *Wintercast* to *Jackson*, in 1844, *Wintercast* divested himself of possession of the lots in favor of *Jackson*, who acknowledged himself to be in possession thereof. In 1849, they were assessed in the tax roll as belonging to *Hyde*, and in the assessment of 1850, as the property of the plaintiff.

The law considers the tradition of real property, as accompanying the public act of sale, and every obstacle to the corporal possession interposed by the seller, is held to be a trespass. Code, 2455.

The vendors of the plaintiff, had not only the possession resulting from the sales, but stood upon the tax records of the State as owners of the property, and openly assumed the responsibilities and charges of possession and ownership. Under the principles recognized by this court, in the case of *Poydras* v. *Laurans*, 6 Ann. 771, and cases there cited, the decision of the district court is clearly right.

The judgment of the district court is therefore affirmed, with costs.

SLIDELL, J., dissenting. By the act of March 25th, 1810, chapter 25th, section 7, it is "provided, that no notarial act concerning immovable property, shall have any effect against third parties, until the same shall have been recorded in the office of the judge of the parish, in which such immovable property be situated.

By the Act of 1846, p. 71, (the office of parish judge having been abolished,) the office of parish recorder was established.

My views on the subject of registry, in cases not characterised by fraud, have differed from those of my brethren. I stated them at some length, in *Stockton* v. *Briscoe*, 1 Ann. 249. They have undergone no such change in any particular, as would enable me to concur in the decree in the present case; but I do not conceive it suitable to state them again at length. I, therefore, refer to what I then said, and to the cases cited below.

The doctrine, that an omission to register, is cured by the registry of a subsequent title, accompanied by possession, has always seemed to me dangerous,

BUCHANAN
v.
MORGAN.

particularly with regard to uncultivated lands, or vacant lots in towns or cities. I do not see how, under this theory, an individual can safely buy, or a bank or capitalist safely loan money, upon unimproved lots, or uncultivated lands. The common course of examination of title, by the attornies of banks and individuals, has been to trace the title down by a satisfactory chain of conveyances, to the person proposing to sell or mortgage, and obtain from the recorder or register, certificates of freedom, from sales or mortgages by him; and the more cautious, properly take like certificates as to the antecedent proprietors. But upon the theory of *Stockton's* case, it would be necessary to have a general search, to see if any individual, other than the proposed vendor or mortgagor, had sold or mortgaged the property in question. A recording officer might, I think, lawfully refuse to give such a certificate. But if he were willing to undertake such a search, the labor of weeks would be required in New Orleans for one certificate, and the duties of the office would become impracticable. A strict construction of the registry laws, must undoubtedly result in cases of individual hardship. But will not the opposite interpretation, lead to results equally, or even more dangerous? Under the former, the diligent are safe. Under the latter, the assurance of safety, is almost an impossibility. Aside, however, from the consideration of results, what is the legal meaning and effect of the very stringent language of the statute? See *Carraby* v. *Desmarre*, 7 N. S. 661. *Gravier* v. *Barron*, 4 L. R. 239. *Hagan* v. *Williams*, 2 L. R. 122. *Mary* v. *Lampré*, 6 R. R. 314. *Tulane* v. *Levinson*, 2 Ann. 787. *Crear* v. *Sowles*, 2 Ann. 598.

I am not aware that our jurisprudence makes a distinction in this matter, (which the statute does not make) between a judicial mortgagee, and a conventional mortgagee, between a creditor who attaches, and a purchaser who buys from the vendee, who has already sold by a deed, which the previous buyer had neglected to record.

What would be the effect of actual possession for a length of time sufficient under the code, to form the basis of a plea of prescription, is a question not presented in this cause.

The natural equity of this case, is against the defendants; but I think the law is in their favor.