The opinion of the court was delivered by
Blanchard, J.
Plaintiff company claims the ownership of certain swamp lands, together with all the timber thereon, whether standing or felled, green or deadened. Among the several tracts of land described” by legal subdivisions is the N. W. 1-4 of section 4, township 12 south, range 8 east.
Defendants are sued as having entered upon the lands, claiming ownership and deadening, trailing, cutting and removing trees and! timber therefrom.
Writs of sequestration and injunction were invoked, the first to seize the timber severed from the soil, the second to prevent further depredations upon the land.
Against the demand, defendants interposed the plea of the general issue, and a claim of title to the N. W. 1-4 of section 4, above referred to. They assert no claim of ownership to the other lands described1 in plaintiff’s petition.
Their contention is that under their title to the land in Section 4, they entered upon the same for the purpose of cutting and removing timber, did cut a number of trees, and deadened and trailed a number of others preparatory to cutting and removing. ,
The trees thus cut they were prevented from removing by the writs v. hich issued herein, and the allegation is made that plaintiff company subsequently floated the same out. and used them for their own purposes.
It is also averred that plaintiff cut and removed without compensation to them (defendants) the trees which had been deadened and trailed, but not cut when the writs issued.
They prayed for rejection of plaintiff’s demand, for dissolution of the writs with damages, to be decreed the owner of the timber cut by them ^and removed by plaintiff, and for judgment against plaintiff for $1,500.00 the value thereof, and for further judgment against plaintiff for $250.00 expenses incurred on account of work done in the deadening and trailing of trees afterwards cut and removed by plaintiff.
The judgment below confirmed plaintiff’s title to all the land claimed and perpetuated the writs of sequestration and injunction.
*2096 It sustained defendants’ demand in reeonvention to the extent of awarding them a decree against plaintiff for $251.35 for work done in deadening and trailing trees upon the land awarded plaintiff.
From that part of the judgment last described plaintiff appeals.
Defendants have not appealed from the judgment rejecting their demand of ownership to the land in Section 4; neither have they joined in the appeal by answer filed here, asking amendment of the judgment of 'the court a qua in any respect.
The only question before us, then, is as to the correctness of the moneyed judgment in favor of defendant.
■ Its proper solution depends upon whether or not defendants are entitled to be considered possessors in good faith of the land upon which they deadened and trailed the frees, for the expense of which the award is made.
The work was done upon the land embraced in Section 4 aforesaid. This, as we have seen, defendants set up title to. Their claim of title is predicated upon an act of sale, dated May 19, 1891, from one Florian Toffier to them. A reference to this act shows that Toffier conveyed to them an undivided half interest only in and to the N. W. 1-4 of section 1, T. 12 S., R. 8 E., together with a like interest in other lands.
It seems, from references made in the act, that one Joseph St. Martin claimed the ownership of the other undivided half interest. That is to say, the act recites that Toffier and St. Martin acquired the land in Section 4 by a patent from the State issued in their joint names in January. 1889. This patent is in evidence.
St. Martin, as to whatever interest he had, never conveyed the same to defendants.
Defendants, then, as a basis for their entry upon the land in Section 4 and cutting and removing timber therefrom, never had anything beyond an act of conveyance of an undivided half interest in and to the same. Not only that, but this act of conveyance of the undivided half interest expressly excluded warranty of title. The words used were: — “With no warranty whatsoever of title.”
In State ex rel. Hake vs. Judge, 52 La. Ann. 105, this court held that “an owner in indivisión of timber lands has no right to cut the timber of such land without the consent of his co-owner, and if he attempt to do so, may be stopped by injunction, for the act is in the •nature of a trespass, and such injunction is not one which may be dissolved on bond.”
*2097 Defendants did not aver or show any consent of their co-owner, St. Martin — supposing the title claimed by these parties through the State be good — to' cut the timber from the land.
As to St. Martin, then, who does not figure in any way in the case, they might be held to be trespassers.
But St. Martin is making no complaint and this is referred to merely to show that a title to 'lands held in indivisión with another, taken by itself, is an unsafe foundation to predicate the theory of good faith upon when a charge of trespass or intrusion upon lands for the purpose of cutting timber is made.
At the time the State issued its patent to Toffier and St. Martin for the N. W. 1-4 of Section 4, it had no title to convey and therefore conveyed none. This quarter section had never been approved to the State by the Secretary of the Interior.
On the contrary, the title to the same, at that time and for more than thirty years previous, was in Joseph Loreau and his transferrees. Loreau had located upon it in the year 1847 Internal Improvement Warrant No. 112. By sanctioning and approving this location the United States vested title in Loreau.
Thereafter the land ceased to be part of the public domain, and when, later, ignoring Loreau’s location, the State selected the quarter section under the swamp land grants, the Department at Washington rejected the selection.
In 1875 Joseph Loreau, having died, an act of partition between his widow, Jrma Boutte Loreau, and his only heir, J. A. Loreau, was executed, by which the latter acquired in full ownership the quarter section in question.
In 1879 he sold it to L. Dugas; in January 1891 Dugas sold it to M. L. Broussard; and in 1895 Broussard sold to the plaintiff.-
These sales were by public act and were all duly and seasonably recorded in the conveyance records of the parish where the land is situated.
They thus exhibited upon the public record a perfect chain of title adverse to that under and through which defendants claim.
The object of the registry laws is to make apparent the ownership of property, and wherever such ownership appears on the public records, by proper titles, that object is attained. Notice is thereby given and no careful person can he deceived. Stockton vs. Briscoe, 1 La. Ann. 249; 6 La. Ann. 773.
*2098 When, therefore, Florian Toffier, in May 1891, sold or pretended to sell to defendants an undivided half interest in the land with an express exclusion of warranty of title, it was, we think, under the facts of this case, sufficient to put defendants on inquiry as to the title, and they are to be considered as having' bought at their risk and peril. Cannon vs. White, 16 La. Ann. 85; Moore vs. Pontalba, 13 La. 571; Duplissis vs. White, 6 La. Ann. 514.
Having thus purchased and having' gone upon the land under these doubtful circumstances, defendants can not claim to be possessors in good faith.
Good faith is “an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law, together with an absence of all information or belief of facts which would render the transaction unconscientious.” A. & E. Ency. of Law, Vol. 8, p. 1361.
It can not be claimed for defendants that in making the purchase from Toffier there was an absence of all information or belief as to the facts. Toffier virtually told them of the doubtfulness of his title. He put them on guard. C. C. 508, 3451, 3452, 503; McGill vs. McGill, 4 La. Ann. 262.
If they did not proceed to inform themselves they were wilfully blind. Millaudon vs. Police Jury, 8 N. S. 132. Those who are thus put on inquiry, and will not avail themselves of the means and facilities at hand to inform themselves of the true facts, can claim no greater consideration than can they who knew the true facts and yet acted to their peril.
Under the circumstances here disclosed defendants could not have believed themselves the true owners.
Louquefs Digest — Possession II (b) No. 2, p. 561.
In the absence of such belief they can be regarded in no other light than as intruders on the land. Being such they can neither claim to be paid the expenses they incurred in deadening the trees, nor the trees which they felled, or their value. C. C. 502.
The expenses which they incurred were not such as were necessary for the preservation of the thing, and it may well be that the true owner may have preferred that the primitive forest should remain.
It is, therefore, ordered and decreed that so much of the judgment of the District Court as awards defendants the sum of two hundred and fifty-seven and 35-100 dollars on their demand in reconvention be *2099 reversed and annulled,- and that in other respects the said judgment remain undisturbed — costs of both courts to be borne by defendants.
Breaux, J., recused on account of interest.
Watkins, J., takes -no part — absent on account of illness.
Rehearing refused.