19 So.3d 20 (2009)
DEUTSCHE BANK TRUST COMPANY AMERICAS as Trustee
v.
Marion A. DUDEK.
No. 2009-CA-0129.
Court of Appeal of Louisiana, Fourth Circuit.
August 12, 2009.
*21 A. Albert Ajubita, Jason R. Anders, Pascal F. Calogero, Jr., Ajubita, Leftwich & Salzer, LLC, New Orleans, LA, for Appellant, Andrea K. Dudek.
Charles L. Stern, Jr., Jaclyn C. Hill, Danielle C. Babashoff, The Steeg Law Firm, L.L.C., New Orleans, LA, for Appellee, Deutsche Bank Trust Company Americas as Trustee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR.)
MAX N. TOBIAS, JR., Judge.
The intervenor/appellant, Andrea K. Dudek ("Ms. Dudek"), appeals from a judgment dismissing her petition and amended petition of intervention in the foreclosure proceeding filed by the plaintiff/appellee, Deutsche Bank Trust Company Americas ("DBT"), against property owned by the defendant, Marion A. Dudek. For the following reasons, we affirm the judgment.
The facts of this matter are not in dispute; the parties agree on the following timeline of events:

24 September 2004: Judgment was entered against Marion A. Dudek by the United States District Court for the Northern District of California (hereinafter, "California judgment");

23 November 2004: The California judgment against Marion A. Dudek was recorded in the mortgage records of Orleans Parish without having been registered in a United States District Court in Louisiana (Instrument No. 793820);

16 December 2004: The California judgment was registered in the United States District Court for the Eastern District of Louisiana, in accordance with 28 U.S.C. § 1963;

23 June 2005: Certification of the California judgment for Registration in Another District and certified copy of Judgment were filed in the Eastern District proceedings;

23 October 2006: The California judgment was assigned to Ms. Dudek by the judgment creditor;

19 December 2006: Homecomings Financial, L.L.C. (f/k/a Homecomings Financial Network, Inc.), predecessor-in-interest to DBT, recorded its mortgage in Orleans Parish;

11 June 2008: DBT files suit in the Civil District Court for the Parish of Orleans to foreclose by executory process on the property owned by Marion A. Dudek.
Ms. Dudek intervened in the proceeding instituted by DBT, seeking to have the judicial mortgage (the California judgment) of which she was the assignee recognized as superior in rank to the mortgage held by DBT, contending that the appropriate procedures were followed in order to create a valid judicial mortgage in Louisiana. DBT argued that because (1) the California judgment was recorded in Orleans Parish before it was registered with a Louisiana federal court and (2) the Louisiana public records did not reflect the registration of the California judgment in a *22 United States District Court in Louisiana before its mortgage was recorded in mortgage records of Orleans Parish, its mortgage primed the judicial mortgage assigned to Ms. Dudek.[1]
On 24 October 2008, a hearing was held on Ms. Dudek's petition of intervention, as amended. On 6 November 2008, the trial court signed a judgment dismissing the intervention with prejudice. This appeal followed.
The sole issue for review is whether the recorded California judgment, which did not show that it had been registered in a United States District Court in Louisiana against Marion A. Dudek, constitutes a valid judicial mortgage. Because this issue is a legal one, we apply the de novo standard of review.
La. R.S. 13:4204 provides:
All judgments rendered by United States courts of original jurisdiction in Louisiana, or those registered in accordance with 28 U.S.C. § 1963, when recorded in the mortgage records of any parish shall rank as judicial mortgages against all of the immovable property of the judgment debtor situated in the parish to the same extent and effect given by Louisiana law to the recorded judgments of the courts of this state. [Emphasis supplied.]
28 U.S.C. § 1963 states:
A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.
The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments. [Emphasis supplied.]
La. C.C. art. 3305 provides:
The filing of an authenticated copy of a judgment of a court of a jurisdiction foreign to this state, such as the United States, another state, or another country, creates a judicial mortgage only when so provided by special legislation, or when accompanied by a certified copy of a judgment or order of a Louisiana court recognizing it and ordering it executed according to law.
In all other cases the judgment of a court of a jurisdiction foreign to this state creates a judicial mortgage only when a Louisiana court has rendered a judgment making the foreign judgment the judgment of the Louisiana court, and the Louisiana judgment has been filed in the same manner as other judgments. [Emphasis supplied.]
*23 Ms. Dudek argues that La. R.S. 13:4204 is ambiguous because it does not specifically state that the recordation of the foreign judgment under state law must take place after the judgment is registered in federal court in accordance with 28 U.S.C. § 1963. We disagree. Section 4204 of title 13 reads in pertinent part: "All judgments ... registered in accordance with 28 U.S.C. § 1963, when recorded in the mortgage records of any parish shall rank as judicial mortgages against all of the immovable property of the judgment debtor situated in the parish...." The clear and plain language of the statute contemplates that the judgment will be recorded in accordance with 28 U.S.C. § 1963 first, and then recorded in the appropriate mortgage records. Foreign judgments filed before compliance with 28 U.S.C. § 1963 do not rank as judicial mortgages and are therefore unenforceable under Louisiana law.
An analogous situation was presented in United States v. Pearson, 258 F.Supp. 686 (S.D.N.Y.1966), wherein the defendant filed an exemplified and certified copy of a judgment rendered by the United States District Court of the Virgin Islands in the office of the Clerk of the New York Supreme Court for the County of New York. The defendant, however, did not file a certified copy of the judgment in a United States District Court in New York under 28 U.S.C. § 1963 and thereafter file a transcript of that judgment in the office of the clerk of any county of New York State pursuant to a statute similar to La. R.S. 13:4204. The court stated:
In this case, it is clear that [the defendant] has not complied with 28 U.S.C. § 1963; the mere filing of an exemplified copy of a Virgin Islands judgment with the clerk of the New York Supreme Court in New York County does not make that judgment enforceable in New York State.
Id. at 691.
In the case at bar, although Ms. Dudek complied with § 1963, it was not until after the California judgment was recorded in the mortgage records of Orleans Parish. In order to create an enforceable judicial mortgage, proof of § 1963 compliance had to be filed into the mortgage records before DBT recorded its mortgage on Marion A. Dudek's property. This could have been done by the original judgment creditors or by Ms. Dudek after she received the assignment of the California judgment.
In the Official Commentary written on the 1988 revisions to § 1963, David D. Siegel cautions:
An important counseling point for a plaintiff registering a judgment in another district is to see to it, after the registration, that whatever steps the local state law requires to make the judgment a lien there are strictly adhered to. [28 U.S.C.] Section 1962 offers a federal judgment a state-law lien only if the procedures that state law requires to effect the lien are satisfied. This may entail nothing more than the filing of a piece of paper-like a transcript of the judgment furnished by the clerk of the district court in the district of registration-with a local county clerk. But whatever it is, it may be indispensable, under § 1962, to the securing of the lien the plaintiff is after.[2] [Emphasis supplied.]
*24 We also note that Ms. Dudeks interpretation of La. R.S. 13:4204 flies in the face of the public records doctrine, codified in La. C.C. art. 3338, which states in pertinent part:
The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument that transfers an immovable or establishes a real right in or over an immovable....
Although Ms. Dudek argues that the recorded California judgment was valid under Louisiana law because it was subsequently registered pursuant to 28 U.S.C. § 1963, the public records did not reflect the subsequent registration when DBT performed its title search before issuing its mortgage.
The public records doctrine has existed in Louisiana law for nearly two hundred years. In the seminal case of McDuffie v. Walker, 125 La. 152, 51 So. 100 (La.1909), the Court stated:
On investigating the law applicable to the facts thus disclosed, it will be found that by Act March 24, 1810, c. 25, § 7 (3 Martin's Dig. p. 140), it was provided that `no notarial act concerning immovable property has effect against third persons until the same shall have been recorded in the office of the judge of the parish where such immovable is situated;' that the Code of 1825 did not repeal that provision of the act of 1810, and hence that, under the Code of 1825, as under the pre-existing law (save in the parish of Orleans) sales of land not recorded as required by the section above quoted were held to be void as to third persons. Carraby v. Desmarre et al., 7 Mart. (N.S.) 663; Gravier et al. v. Baron et al., 4 La. 241; 2 Hen. Dig. p. 1300, No. 2.
There were, however, differences between the provisions of the Code itself upon the subject of the registry of notarial acts and of acts under private signature, and by a statute of March 20, 1827 (Laws 1827, p. 136), it was declared that acts of transfer of immovables, not registered agreeably to law, whether passed before a notary or otherwise, should have no effect against third persons but from the day of their being registered. Under the law, as it thus stood, it was held by our predecessors in this court that an attachment of a slave levied before the registry of a previously executed sale should be sustained (Williams v. Hagan et al., 2 La. 122); that a recorded judgment and seizure thereunder took precedence of a prior but unrecorded sale (Mary v. Lampre, 6 Rob. 314); that a purchaser by notarial act of date April 11, 1845, not recorded until July 5th, could not hold the property against an attacking creditor of the vendor who made a seizure on July 2d, though the failure to record the sale was attributed to the neglect of the notary, who had promised to attend to the matter and had received the fee to be paid to the register (Crear v. Sowles, 2 La. Ann. 597); that a title acquired at sheriffs sale in February, 1843, and duly recorded, took precedence of a conventional *25 sale, executed in March, 1842, and recorded in due time, not, however, in the office of the parish judge, but in the mortgage office (Tulane v. Levinson, 2 La. Ann. 787).
In other cases it was held (Justice Slidell dissenting) that a person in possession under a recorded title could not be affected by the fact that the title of his author had not been recorded. Stockton v. Briscoe, 1 La. Ann. 249; Buchanan v. Morgan, 7 La. Ann. 454. And there were still other cases which seemed to derogate from the force of the statutes as interpreted in the cases first cited; so that the jurisprudence of the state can hardly be said to have been in a satisfactory condition. In 1855, therefore, the General Assembly took the matters up, and passed the Acts Nos. 259 (page 320), 274 (page 335), and 285 (page 345), which (save certain provisions concerning slaves) were subsequently incorporated in the Revised Civil Code of 1870 under the title, `Of Registry,' as articles 2251 to 2266. Act No. 259 was entitled `An act relative to notaries in the city of New Orleans.' Act No. 285 was entitled `an act creating a register of conveyances for the parish of Orleans.' Act No. 274 was entitled `An act relative to registry,' and was of general application throughout the state. It has been incorporated in the revised Civil Code as articles 2264, 2265, and 2266, with an addition (to the latter article) which will be noted. Section 1 of the act (now Civ.Code, 2264) provides:
`That no notarial act concerning immovable property shall have any effect against third persons until the same shall have been deposited in the office of the parish recorder [an officer created by Act of 1846, p. 71, No. 104] or register of conveyances of the parish where such immovable property is situated.'
Section 2 of the act (now Civ.Code, 2265, 2266) provides that all sales, marriage contracts, etc., and final judgments affecting immovable property, `shall be recorded in the parish where the immovable property is situated,' and that `all sales, contracts and judgments, affecting immovable property, which shall not be so recorded, shall be utterly null and void except between the parties thereto. The recording may be made at `any time but shall only affect third persons from time of the recording.' In the revision of the Civil Code in 1870 there appears to have been added to the act of 1855 the following, which constitutes the last paragraph of article 2266, to wit:
`The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.'
Id. at 160-62, 51 So. 102-03. [Emphasis supplied.] The landmark decision in McDuffie also established the principle that a third person can acquire valid title from the owner of record even where the record owner is not the true owner since an act of sale of immovable property not recorded is null as to third parties.
We also note that, because the California judgment did not purport to act as a judicial mortgage as mandated by the precise language of the statute, DBT was not under any obligation to take any additional steps to ascertain its validity and/or cancel the inscription. See Dupuy v. Demarest, 342 So.2d 263, 265 (La.App. 4th Cir.1977)("Mandamus is the proper remedy for compelling the Recorder of Mortgages to cancel an illegal inscription purporting to act as a judicial mortgage.")
Based on the foregoing, we affirm the judgment of the trial court that dismissed Ms. Dudek's intervention with prejudice.
AFFIRMED.
ARMSTRONG, J., concurs in the result.
*26 ARMSTRONG, C.J., concurs in the result.
I respectfully concur in the result reached by the majority.
NOTES
[1] Under Louisiana law, generally "registration" means the filing of a document in the conveyance records of a parish. Ordinarily, "recordation" means the filing of a document in the mortgage records of a parish. "Registration," as used in 28 U.S.C. §§ 1962-63 and this opinion, means the process as outlined in those statutes to create a judgment enforceable under state law.
[2] 28 U.S.C. § 1962 provides:

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. This section does not apply to judgments entered in favor of the United States. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.