CHARLES DE BLANC, Syndic, *v.* JOSEPH MARTIN.

A contract will be deemed to have been made in fraud of creditors, where the obligee
knew that the obligor was in insolvent circumstances, and the contract gives to
the obligee, if a creditor, any advantage over the other creditors of the obligor. It
will not be necessary to establish positive knowledge in the obligee of such insol-
vency; proof of circumstances tending to produce a strong impression that he was
aware of it, will suffice.

APPEAL from the District Court for the parish of Assumption,
*Nicholls,* J.

*Miles Taylor,* for the plaintiff.

*Ilsley* and *Nicholls,* for the appellant.

BULLARD, J. The syndic of the creditors of Jean Materre in-
stituted the present action to annul a sale made by the insolvent to
his father-in-law, the defendant, of the merchandize and fixtures
in his store in the parish of Assumption, of all the moveables and
furniture then in the house, the horses, cows, oxen, carriages,
carts, tools, and every thing which constituted his establishment
in said parish, together with all the debts and notes then due, or
to fall due, growing out of the business of said store, and the use,
for five years, of the property on which the store was established.
It is alleged that this sale was fraudulent as to the creditors of
the vendor, having been made when he was in failing circum-
stances, to the knowledge of the defendant, within three months
of his declared insolvency, and with a view to give an unjust
preference to some of his creditors over others.

There was a judgment annulling the contract, and the defen-
dant has appealed.

The insolvency of Materre at the time of the contract is proved
to our satisfaction. The amount of his debts at that period is
shown to have greatly exceeded his means.

It is equally clear that Martin was a creditor of the vendor, at
least for $2400, and part of the price is stated in the sale to have
been due to the purchaser for an amount previously loaned. The
form of the act is unusual, if not suspicious. It is in the nature
of a sale *omnium bonorum.* It purports to convey in a lump the
merchandize, furniture, stock of horses, cattle, &c., farming uten-
sils, notes, and book accounts, due or not due, without any speci-
fication or detail, of which, however, it is stated that a general

inventory *had been exhibited ;* but no such inventory is annexed to the act of sale, nor otherwise referred to. It is impossible from the act itself to ascertain what was sold, much less its real value. The consideration is stated to have been $20,000; of which, $3700 had been paid to the Louisiana State Bank, $1500 to the son of the purchaser, $3600 to Clement for his salary, $800 to Mad. Breaud, besides the borrowed money, and the balance was to be paid in four equal annual instalments.

The insolvency being apparent, and it having been admitted by the contract itself that the purchaser was a creditor of the vendor, the Code is positive " that every contract shall be deemed to have been made in fraud of creditors, when the *obligee knew that the obligor was in insolvent circumstances,* and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor." Art. 1979. The only question, therefore, which remains is, whether Martin knew of the insolvent circumstances of Materre. This was solved by the District Court in the affirmative. It is impossible to bring home very positive knowledge on such a subject. There are circumstances which tend to create a strong impression that Martin was not ignorant of the failing circumstances of his son-in-law. About five months previous to the sale in question, he had required from him a mortgage to secure him against certain endorsements and an *avancement d'hoirie*—that is to say, as we presume, a sum received on account of his wife, from her father. The amount secured was about $21,000, and the property mortgaged was nearly all, (except what formed the object of this sale,) that Materre possessed. He must have known also of the obligations of his son-in-law to the State Bank, because this sale makes provision for $3700 paid to that bank, as well as for $1500 borrowed by his son of Abat to pay for Materre. Upon this question of fact we see no sufficient reason to differ from the court below, which was satisfied, from all the circumstances of the case, that the defendant knew of the failing circumstances of his vendor. It becomes, therefore, useless to examine other questions raised in the argument of the case. Being satisfied that Martin was a creditor, that he knew of the discomfiture of Materre, and that he obtained an advantage by the contract to the prejudice of the other creditors, the contract is liable to be avoided. The case is different from that of *Maurin*

*&. Co.* v. *Rouquer et al.*, 19 La. 594. It did not appear in that case that the son was a creditor of his father, much less that he knew of his insolvency, and the price really paid was a fair one.

Having concluded that this contract ought to be annulled, so far as it affects the creditors of Materre, the court below found it difficult to render such a judgment as should place the parties in the condition they were in before the sale. This difficulty arose from the vagueness of the contract, and the want of *data* as to the goods or notes and book accounts which Martin should restore on the cancelling of the contract. The judgment, therefore, permits Martin to retain what he purchased, on his paying to the syndic the price of the property, reserving to him his right to come in as a creditor for such sums as he may show were really due to him for payments made on account of the purchase. This appears to us equitable and just.

*Judgment affirmed.*