## E. Cannon v. R. White.

The Act of Congress, approved July 6th 1842, entitled "An Act confirming certain land claims in Louisiana," embraces—"that the confirmation made by virtue of the 7th and 9th sections thereof shall only operate as a relinquishment of the right of the United States, and shall not affect the right of third persons, nor preclude a judicial decision between private claimants for the same land.

In cases of fraud and simulation it is a cardinal principle that great latitude in the introduction of evidence is allowed, leaving to the Court and jury to determine, from all the surrounding circumstances, the weight and effect of such evidence. Thus, the conversations and admissions of the parties, even when not made in the presence of each other ; their acts and actions, are, under the above restrictions, admissible in evidence. Even in matters of conflicting settlements upon public lands, the acts and conversations of the parties are admissible ; the objection going to the effect.

Where the title to public land has passed from Congress, and forms no longer part of the public domain, the pretensions of the litigants must be determined by our State laws and jurisdiction.

In a petitory action the plaintiff must succeed on the strength of his own title, and not on the weakness of the adverse title. But where a party obtained a quit claim by falsely and fraudulently attributing to himself certain rights, this Court will interfere and correct the error. It has been repeatedly decided in the Supreme Court of the U. S., as well as by this Court, that persons who obtain patents by a suppression of a part of the facts of the case will not be permitted to derive any benefit thereby, but that such patents will inure to the parties entitled to recover the lands thus patented. *Per curiam*, we can see no good reason why the principle should not be extended to the case of a person obtaining a title in his own name, by fraudulently basing his demand on the habitation and cultivation of another, when the equitable right of the latter would otherwise be without remedy.

A purchaser in bad faith owes indemnity, and is entitled in law to no other claim for his improvements than those stated in the three first sentences of the C. C., Art. 500. 12 An. 545.

Where the defendant does not urge in this Court any of the bills of exception taken by him to the rulings of the Court below, it is considered a waiver of those exceptions.

Clerks of District Courts throughout the State have co-equal powers with the Judges thereof to issue commissions to take testimony. Act of 1846, p. 63 ; Act of 1850, p. 99 ; 9 An. 69.

In respect to depositions, complete mutuality, or identity of all the parties is not required. It is generally sufficient if the matters in issue were the same in both cases, and the party against whom the deposition is offered has full power to cross-examine the witness.

Where a sale was made without any warranty *or recourse whatever*, the purchaser bought at his own risk and peril, and could not claim restitution.—*Ergo*, the vendor was a good witness and not interested in proceedings *aliende*. C. C. 2481 ; 3 An. 326.

APPEAL from the District Court of the Parish of Caddo, *Criswell*, J. *Weems & Heath*, for plaintiff and appellant. *B. S. Hodge* and *Landrum & Williamson*, for defendant.

DUFFEL, J. The plaintiff is appellant from a judgment of the District Court rendered, on a verdict of a jury, adversely to his claim.

This is an action for the recovery of six hundred and forty acres of land, situated on Red River, which the plaintiff, as assignee of *Edward McLaughlin*, by a regular chain of title, claims by right of occupation, habitation, and cultivation, prior to, and on, the twenty-second February eighteen hundred and nineteen, under the provisions of the Act of Congress approved March third eighteen hundred and twenty-three, entitled "An Act providing for the examination of the titles of land in that part of the State of Louisiana situated between the Rio Hondo and the Sabine river," and an Act supplementary thereto, approved May 26, 1824. See United States Statutes at Large, vol. 3, p. 756, chap. 30, and vol. 4, p. 65, chap. 182.

In support of his claim, the plaintiff produced in evidence a report made on the 1st November 1824, to the Secretary of the Treasury, by the Register and

CANNON
*v.*
WHITE.

Receiver of the South-Western Land District, wherein they declare that " on this testimony we are of opinion the claim ought to be confirmed, and have consequently in the abstract classed it with the third class of claims."

This claim is described in the report as " a tract of land lying within the late neutral Territory situated on the waters of Red River, on the south-east side of the cut-off which forms Norris' Island, bounded on all sides by vacant lands, and containing 640 acres," and is described in the abstract as follows :

| "N No. 14. | Names of claimants. | Third Class. Situation, of the claim. | Quantity, Acres. | hund. |
|---|---|---|---|---|
| | Leonard Dyson, Ass'ee of Ewd. McLaughlin. | Red River. | 640. | 00" |

The plaintiff contends that the above claim was confirmed by an Act of Congress approved May 24, 1828, entitled " An Act to confirm claims to lands in the district between the Rio Hondo and Sabine rivers, founded on habitation and cultivation." See U. S. Statutes at Large, vol. 6, p. 382, ch. 92.

The first section of said act provides " that the claims to lands founded on habitation and cultivation reported for confirmation, by the Register and Receiver of the South-Western District of Louisiana, in their report dated November first eighteen hundred and twynty-four, in conformity to the provisions of the Acts of Congress of the third of March eighteen hundred and twenty-three, and twenty-sixth of May eighteen hundred and twenty-four, contained in the third class of the report of said Register and Receiver, be, and the same are hereby confirmed, except claim No. forty-two near Cantonment Jesup, and the claims of Leonard Dyson, Nos. fourteen and eighteen.............................
....................which claims are suspended until it is ascertained whether they are situated within the limits of the lands claimed by the Caddo Indians."

The second section provides " that the confirmations made by this Act shall not be construed to extend further than to a relinquishment of title on the part of the United States, and the claims hereby confirmed shall be located under the direction of the Register and Receiver of the proper Land Office, in conformity with the legal subdivisions of the public surveys, so far as practicable, and shall include the improvements of the claimants respectively."

The plaintiff also claims title by prescription, based upon a continued, peaceable, and uninterrupted possession, as owner, for more than thirty years ; and charges that said land was confirmed in the name of one *John McLaughlin* on false and fraudulent representations and affidavits, and that the defendant, *Reuben White*, well knowing the spurious. evidence upon which the claim of *John McLaughlin* rested, did nevertheless purchase said land from *John McLaughlin*, and holds illegal possession of the same under his above title ; and the plaintiff concludes by demanding to be recognised as the lawful owner of said land, and also that the defendant be condemned to pay to him, for the illegal detention of said property, three thousand dollars, and the further sum of twenty-five hundred dollars per annum, for the rents and profits of said lands, from the 1st of January 1853 until the final decision of this suit.

The defendant, in his answer, after setting up a title in himself, denies the right of action of the plaintiff, under the allegations of his own petition ; and in support of his title, he produced in evidence :—1o., the separate reports made on the 30th May and 6th of June 1840, by the Register and Receiver of the Land Office at Opelousas, under the provisions of the Act of Congress approved 6th February 1835, and entitled : "An Act for the final adjustment of claims to

lands in the State of Louisiana, (see U. S Stat. at Large, vol. 4, p. 749, ch. 17,) which report states under No. 162, " that *John McLaughlin* claims 640 acres of land situated on the neutral Territory between the Rio Hondo and Sabine rivers, and lying on the right bank of Red River, descending, below and contiguous to Pascagoula bayou, and about 60 miles, by land, from the town of Natchitoches, founded on habitation and cultivation by the claimant, on, and prior to, the 22d, of February 1819." Proof of said habitation and cultivation, as aforesaid, is made by the affidavit of the claimant, and the testimony of two witnesses.—2dly, an abstract and alphabetical list of Spanish and Rio Hondo claims, reported by the Register and Receiver at Opelousas, State of Louisiana, May 15th 1840, as follows :

| " No. of claim. 162. | Page. 116. | By whom claimed. McLaughlin, John. | Quantity and location. 640 acres late neutral Territory; right bank, Red River, below and contiguous to Pascagoula Bay, 60 miles from Natchitoches. | Class. 2. B. |
|---|---|---|---|---|

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

—3dly, an order to survey and locate the claim of *John McLaughlin* No. 162, bearing date October 12th 1842, and a certificate of the report and confirmation of the claim by the Act of Congress approved July 6th 1842, entitled : "An Act confirming certain land claims in Louisiana." See U. S. Stat. at large, vol. 5, p. 491, ch. 50). The seventh section of said Act provides " that the claims to lands within the district, south of Red River, being numbers thirty-three . . . . . . . one hundred and sixty-two . . . . . . . . . . . . of the reports of the Register and Receiver of the Land Office at Opelousas, dated thirtieth May and 6th June eighteen hundred and forty, made under the provisions of the Act of eighteen hundred and thirty-five, aforesaid, be, and the same are hereby confirmed, etc," and the ninth section of said Act provides " that the confirmations made by virtue of the two preceding sections shall only operate as a relinquishment of the right of the United States, and shall not affect the right of third persons, nor preclude a judicial decision between private claimants for the same land ; and on the presentation, to the Commissioner of the General Land Office, of the plat of survey, duly proved by the Surveyor General of Louisiana, the claimant shall be entitled to a patent."

4th. A survey and location of claim No. 162, made November 15th 1842, and approved March 3d 1843 by the Surveyor General of Louisiana.

5th. A patent, dated September 20th 1844, in favor of John McLaughlin, for claim No. 162, surveyed and designated as section 34, containing 621 23–100 acres, in T. 16, north of Range 12 W., in the North Western Land District, in the State of Louisiana ; containing the following reservations : " but in no manner to affect the rights of third persons, nor to preclude a judicial decision between private claimants, for the same land."

6th. The transfer of said land from John McLaughlin to the defendant by Act dated June 22d 1848, and an Act explanatory thereof, dated September 13th 1848.

The record contains seventeen bills of exception, ten having been taken by the plaintiff and seven by the defendant. The defendant did not, however, urge in this Court any of the bills taken by him to the rulings of the Court below, which fact, according to the practice of this Court, is a waiver. *Williams* v.

CANNON
v.
WHITE.

*Bridge et al.* 14 An. 721.   We will not undertake the onerous task of reviewing, *seriatim*, the bills of exception of the plaintiff to the rulings of the District Court rejecting and excluding a portion of his evidence, but we will dispose of them *in globo.*

It is a cardinal principle that in cases of fraud and simulation, great latitude in the introduction of evidence is allowed, leaving to the Court and jury to determine, from all the surrounding circumstances, the weight and effect of such evidence : thus, the conversations and admissions of the parties, even when not made in the presence of each other, their acts and actions, are, under the above restrictions, admissible in evidence.   *Guidry* v. *Grivot* 2 N. S. 13.   *Davis* v. *Stern,* 15 An. 177.   *Meyers et als.* v. *Chaney et al.* 13 Ann. 207.   And even in matters of conflicting settlements upon public lands, the acts and conversations of the parties are admissible in evidence ; the objection going to their effect. *Franklin* v. *Woodland* 14 An. 188.

The District Court ruled that a previous order for the issuing of commissions to take testimony was indispensable.   The commissions alluded to were issued by the clerk under the first section of the Act of 1846, p. 63, which authorizes specially the clerks of the several District Courts to issue " commissions to take testimony, in and out of the State, to fix the return day thereof, and to appoint commissioners to execute the same."   It was held, in the case of *Bradford* v. *Cooper,* 1 An. 325, that a commission officially signed by the Judge himself, was a sufficient approval of the commission and a sufficient order, in the intendment of the various articles of the Code of Practice on the subject.   The Legislature had, under the Constitution of 1845, as it now has under the present Constitution, " the power to vest in Clerks of Courts, authority to grant such orders, and do such acts as may be deemed necessary for the furtherance of justice " ; and, therefore, if the issuing of a commission be a judicial act, the ruling in the case of *Bradford* v. *Cooper* would apply with equal force to commissions issued by clerks.   Such in fact was the decision rendered in the case of *Ferriber* v. *Latting,* 9 An. 169, under the statute of 1850 p. 99, which is, as far as this point is concerned, a re-enactment of the act of 1846.

The District Judge ruled out the testimony of the witnesses taken on the above mentioned commissions, for the further reason that, the commissions having issued in several cases, wherein the present defendant was plaintiff, at the instance of the defendants in said causes, to wit : the lessees of the present plaintiff, before the latter had made his appearance on the call of his lessees to defend the suits, (these suits were for the recovery of the land now in dispute) the defendant could have successfully excluded the testimony, and it would therefore be unfair to permit him to use it against *White* in the present action.

We will here remark that the witnesses who testified in the above cases are either dead or absent from the jurisdiction of the Court.

In the case of *Clossman* v. *Barbancy,* 7 Rob. 438, we find the following language : " The rule applicable to cases of this sort, is thus laid down in Greenleaf's Treatise on Evidence p. 589 : " with respect to depositions, complete mutuality or identity of all the parties is not required.   It is generally sufficient, if the matters in issue were the same in both cases, and the party against whom the deposition is offered had full power to cross examine the witness.   " The deposition in question comes, we think, within the above rule, which appears to us a reasonable one, and it should have been admitted."   In the case at bar the object of the suit is the same ; fraud, here as in the other suits, is charged against

*White* and his author, and the title of *White* was assailed and the one of *Cannon* opposed to it, and *White* had a full opportunity to cross-question the witnesses.

The testimony of *John W. Mahle* was improperly rejected on the score of interest, for the sale of the undivided third of the land in dispute made by his father, now deceased, was a sale of all his right, title, interest, claim and pretentions without any warranty *or recourse whatever ;* the purchaser, therefore, bought at his own risk and peril, and could not claim restitution. C. C, 2481. *Hall et al.* v. *Nevill,* 3 An. 326.

We will, therefore, consider the rejected testimony, which came up with the record, discarding matters of pure opinion, and all hearsay evidence which does not fall within the purview of public notoriety, and giving to the rest such weight and effect as the nature of the case will justify.

As we have above stated, the plaintiff contends that his claim was confirmed by the above recited act of May 24th 1828. We have no doubt that, had it been ascertained at the time of the passage of the Act, that the claim No. 14, of *Leonard Dyson,* as assignee of *Edward McLaughlin,* did not lie within the Caddo Indians, it would have been confirmed. And it is now fully demonstrated that the lands of the Caddo Indians did not cover the claim No. 14. (See treaty between the United States and the Caddo nation, dated July 1st·1835, and promulgated February 2d 1836. U. S. Statutes at Large vol. 7, p. 470.)

We cannot, however, give to the Act of May 24th 1828, the construction which the plaintiff places on it, for we do not understand the words of the Act to say, or mean, that the claim is confirmed subject to a certain contingency, to wit : that it did not fall within the Caddo Indian Territory. · It was not the effect of the confirmation which was suspended, for the Act did not confirm the claim, but the action of Congress on the claim itself was suspended and reserved for its subsequent consideration, after the ascertainment of a particular fact ; thus requiring the further action of Congress to complete the title of the plaintiff. Nor indeed can it be said that the act reserved the land for sale, or precluded the United States from disposing of the same, by sale, donation, or otherwise, for the land was not surveyed, located, or described in such a manner as to designate it with sufficient certainty. *Menard's Heirs* v. *Massey,* 8 Howard 293. *Cousin* v. *Blanc's Executor & al.,* 19 Howard 80.

We are also clearly of opinion that the title to the land in controversy has passed from Congress and forms no longer part of the public domain ; and also, that the apparent title is in the defendant ; hence that the pretensions of the litigants must be determined by our State laws and judicature. *Wilcox* v. *Jackson,* 13 Peters, Curtis Vol. 13, p. 276. The Act of Congress confirming the claim of *John McLaughlin,* and the patent issued under said Act, both reserved to third persons their right of action.

Were this case to be viewed *simply* as a petitory action, when the plaintiff must succeed on the strength of his own title and not on the weaknesss of the adverse title, the case would be against him ; for his title *unaided* would have no standing in a court of justice. *Ezra Hiestand* v. *Gideon C. Forsyth,* 12 Rob. 371, *Bookout* v. *Anderson,* 2 An. 246. *W. Penn* v. *Holme,* 21 How. 481. But if it be true that *John McLaughlin* obtained from Congress a quit-claim to the land in dispute, by falsely and fraudulently attributing to himself the occupation, habitation and cultivation of his father, *Edward McLaughlin,* and that the defendant was cognizant of the fraud practiced on the Register and Receiver, then this Court will, under the prayer of the plaintiff, for all legal, equitable,

CANNON
v.
WHITE.

general and special order in the premises," decree the patent, and the land covered under it, to the plaintiff. The nature of the case is such, that any other ruling, or order, in the event of the required proof being made, would perpetuate the fraud, for this court is powerless to nullify an Act of Congress on account of fraud practiced on its officers ; but is, we deem, perfectly competent to carry out the intention of the sovereign power, which was to give the land to the party who had cultivated and made a habitation thereon.

The Supreme Court of the United States, and this Court, have on more than one occasion, decided that persons who obtain patents by a suppression of a part of the facts of the case, will not be permitted to derive any benefit thereby, but that such patents will inure to the parties entitled to recover the lands thus patented. *Kittridge* v. *Braud*, 4 R. 79. *Knox* v. *Pulliam*, 14 An. 123. *Lytle et al.* v. *State of Arkansas et al.*, 22 How. 202, and the cases therein cited.

We can see no good reason why the principle should not be extended to the case of a person obtaining a title in his own name, by fraudulently basing his demand on the habitation and cultivation of another, when the equitable right of the latter would otherwise be without any remedy.

Thus we are called upon to examine the question of fraud, both in the grantee, *John McLaughlin* and his vendee, the defendant.

The evidence is conclusive, that *John McLaughlin* never cultivated any portion of the land patented to him, nor lived on it otherwise than under the roof of his father, and that the Register and Receiver were grossly imposed upon by false representations and affidavits; and this evidence, which is otherwise abundant, is fully and completely corroborated by a written admission, in the form of an affidavit, of *John McLaughlin*, made in 1843. The evidence is equally certain that *Edward McLaughlin* inhabited and cultivated the land in controversy on, and prior to the 22d of February 1819, and that he had no neighbor for a distance of several miles around. The fact that *Edward McLaughlin* had two small clearings, or fields, and that the survey and location of the claim No. 162 embraces but one, is immaterial : and the mis-description of the land, as to boundaries, in all the transfers from *Leonard Dyson* to the plaintiff is of no consequence, because it is proven that *Dyson* never owned any other land in the neighborhood, and besides the locality is well defined by witnesses who speak of the same, some of whom occupied different portions as lessees of the plaintiff's vendor, *Wright*.

The defendant does not legally stand in a more favorable light before us. He had full and ample means of knowledge : he knew, two years before buying, that the occupants, or at least some of the occupants, of the land, held the same as the lessees of the plaintiff's immediate vendor ; after the sale, he bought out some of the tenants ; sued others, and dismissed the actions, after he had obtained by that means possession, and we have no doubt, for the purpose of avoiding the issues of fraud made in the case in which the present plaintiff had intervened. The price purported to have been given was not serious ; in fact all the surrounding circumstances, the acts, actions and declarations of the parties, the rumors which were then rife in the community, all tend to the conclusion that the defendant well knew the fraudulent character of *John McLaughlin's* title. But if we give faith to the testimony of *Henry Strider*, and we have no reason to discredit him, then we have proof direct of his knowledge of the fraud, and of the motive which induced him to buy.

It is perhaps not amiss to remark that *John McLaughlin* in his affidavit of

<div style="float:right">CANNON<br>v.<br>WHITE.</div>

the 12th May 1843, not only disclaimed title to himself, but admitted the validity of the claim of *Leonard Dyson* as assignee of his father, *Edward McLaughlin*, This transpired five years before the sale made to the defendant, and we have reason to suppose that he was made acquainted with all the facts therein stated, as the affidavit had been deposited in the Register's office at Opelousas, where the defendant obtained informations in relation to the claim before making the purchase. Thus we have the declarations, in writing, of *John McLaughlin*, which amount to a quit-claim in favor of *Dyson*, and we see the land in the possession and occupancy of those holding under *Dyson* at the very time of the date of the sale to the defendant.

The defendant being thus, in legal parlance, a purchaser in bad faith, owes indemnity, and is entitled, in law, to no other claim for his improvements than those stated in the three first sentences of the C. C. Art. 500, *Gibson* v. *Vaughan*. 12 An. 545.

The evidence on the head of damages is very meagre, and the remark applies to the improvements made by the defendant. The defendant has, we can safely say, been in possession of the whole land since 1853. The land cleared at that period was about 250 acres, and the lowest estimate for rent is $3 00 per annum per acre. The improvements made by the defendant are valued at $5,250. The quantity of land cleared at the trial of the suit below was about 480 acres.

The plaintiff is therefore entitled for rent, at the rate of $3 per acre per annum on 250 acres from January 1st 1854 to the date of the judgment below, April 30th 1859, $3,833 33, and from that date until possession be delivered to him at the same rate on 480 acres, and it shall be optional with the plaintiff to keep all the improvements on the place by paying therefor $5,250. The free use of the excess of the clearing, from January 1st 1854 to April 1859, and the cord wood consumed, will more than compensate for the expense of the clearing made.

It is, for the reasons assigned, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed. It is further ordered, adjudged and decreed, that the plaintiff be, and he is hereby, recognized as the lawful owner of section thirty-four, containing six hundred and twenty-one 23-100 acres of land, in Township sixteenth (north) of Range Twelve West, in the north western land District of the State of Louisiana, and that a writ of possession issue. It is further ordered, adjudged and decreed, that the plaintiff have judgment against the defendant in the sum of three thousand eight hundred and thirty-three dollars and thirty-three cents, with costs in both courts. It is further ordered, adjudged and decreed, that the plaintiff have judgment, and the defendant pay unto him, at the rate of three dollars per annum per acre, on four hundred and eighty acres, from April 30th 1859, until possession of the land be delivered as above stated. And it is further ordered, adjudged and decreed, that the plaintiff shall elect, within thirty days after this judgment shall become final, whether he will keep the improvements erected on the above described land, on paying for the same five thousand two hundred and fifty dollars to the defendant; and on his so electing, or making default, execution may issue on this part of the judgment against the plaintiff; but on his refusal to retain the said improvements, the defendant is hereby permitted to remove the same within a reasonable time.

It is finally ordered, that the clerk of this court be, as per agreement on file, directed to issue notices of this judgment to the Sheriff of the parish of Caddo for service on the counsels of both parties.

Mr. Justice LAND recused himself, having been of counsel in the case.