No. 382

First Circuit

BANK OF BALDWIN v. BROUSSARD
(BANTA, Garnishee)

For original opinion, see 10 La. App. 404.

Brumby & Bauer, of Franklin, attorneys for defendant, appellant.

Borah, Himel, Bloch & Borah, of Franklin, attorneys for plaintiff, appellee.

ON APPLICATION FOR REHEARING.

MOUTON, J. Counsel for applicant does not complain of that part of our opinion wherein we held that plaintiff bank was not compelled to resort to a separate proceeding under the revocatory action. We therefore assume that the errors complained of refer exclusively to our judgment on the merits of the case.

In support of their contention that Broussard was solvent at the time of the transfer, counsel for Banta rely to a large extent on the testimony of Lebourgois, who gave Broussard an extension for the bank of 30 days on the note.

It is true Lezourgois said Broussard had an automobile, but then says: "I suppose it was his." He said also that Broussard had enough to pay his note, over and above his rice, but proceeds immediately to say: "Yes, I thought I could get my note." Finally, testifying along these lines, he says: "I granted him an extension on the statement that he made to me about having the rice to pay the note. That was what I based my extension on. He told me, he had the rice to pay the note, but he would have to sacrifice it to take the note up then." It is clear from these statements that Lebourgois had his eye on the rice for the payment of the note, and allowed the extension believing that Broussard would pay the amount on what he would realize on his rice, but in which he was to be sadly disappointed.

Four letters were written by Broussard to Himel, Lebourgois, and the plaintiff bank in which he made the declaration that he could not pay his debts, and which indicated that he was in a state of insolvency. Counsel say that such declarations were the "rankest sort of hearsay testimony in so far as Banta is concerned."

In this suit the transaction is attacked as a simulation, and in the alternative as a fraudulent transfer.

In the case of Gaidry vs. Lyons, 29 La. Ann. 4, where similar issues were involved, and where such declarations were characterized as hearsay, the court quoted from Davis vs. Stern, 15 La. Ann. 177, as follows:

"Conversations or admissions of the parties implicated in the fraud or simulation may be offered by creditors when the objection to such evidence going to the effect or weight of it when the declarations are not made in the presence of the other party."

In the 29 La. Ann. case, the court not only approved the ruling in the case quoted from, but added the following:

"In such cases a large latitude in the admission of evidence is not merely permitted, but enjoined."

It is extremely difficult to prove simulation or to ferret out fraud, and but in rare instances is it susceptible of positive and direct proof; and this is the reason for the relaxation of the rule of law in such cases, says the court in Davis vs. Stern, 15 La. Ann. 177.

The same reasoning is found in Fass vs. Rice Bros & Co., 30 La. Ann. 1278, a much later decision. The following are a few of the many decisions of our courts from our earliest adjudications which have uniformly recognized that doctrine: Martin vs. Reeves, 3 Mart. (N. S.) p. 22, 15 Am. Dec. 154; Cannon vs. White, 16 La. Ann. 85; Montgomery vs. Chaney, 13 La. Ann. 207; Boissy vs. Lacou, 10 La. Ann. 29.

As it was shown, for the reasons given in our original opinion, that Banta had participated in the fraud and was clearly implicated therein, the declarations of Broussard in the letters were admissible against him, the objection thereto going to their weight or effect, under the rulings in the decisions above cited.

Counsel say that in the opinion rendered by us we erroneously stated that Banta had obtained the extension on the note for Broussard. In that respect counsel is correct. On this question we will say, however, that Banta was a nephew of Broussard by marriage, that he had been associated with him in business for two or three years, had represented him in his business while Broussard was sick in New Orleans, had sold his rice crop, had sought to obtain a reduction of his rent note with the plaintiff bank, in fact, had intimate confidential business relations with Broussard, all of which irresistibly lead to the conclusion that Banta knew that this note had been extended by the bank. To conclude otherwise would do violence to the whole trend of the evidence in this record, and, though it be true that Banta did not obtain the extension on the note, he nevertheless knew the extension expired about the time he claims to have acquired the rice under the transfer.

Counsel say further that this court held the transaction either simulated or fraudulent, and in that respect reversed the trial court.

In its opinion the lower court referred to the transaction as a simulation, but refrained from decreeing that it was a simulation, and then proceeded to render its judgment decreeing its annulment as a "fraudulent transfer." In commenting on the evidence in the course of our opinion, we made a similar reference to the transaction, but nowhere indicated that we held it to be a simulation. We said that Banta had obtained a preference from Broussard who was known to him as being an insolvent and which laid the contract for the transfer open to annulment, and then proceeded to affirm the judgment which rested on the declaration that the transaction was "a fraudulent transfer," and was for that reason annulled.

A simulation is a sham, a myth, and the decree of annulment rendered below and affirmed by this court had no possible reference to a simulation which could have no existence, and could not be either set aside or annulled.

For the foregoing reasons and those expressed in our original opinion, the rehearing is refused.