## No. 382

### First Circuit

## BANK OF BALDWIN v. BROUSSARD (BANTA, GARNISHEE)

(January 9, 1929. Opinion and Decree.)
(March 6, 1929. Rehearing Refused.)

For opinion on rehearing see page 801.

Borah, Himel, Bloch and Borah, of Franklin, attorneys for plaintiff, appellee.

Brumby and Bauer, of Franklin, attorneys for defendant, appellant.

MOUTON, J. This suit was instituted by plaintiff against John R. Broussard on a promissory rent note for $367.50, payable October 1, 1927, with 8 per cent. interest from maturity, and 10 per cent additional for attorney's fees. The suit was accompanied by a writ of attachment issued against defendant. Garnishment process was also issued with the writ against Philip A. Conrad of Iberia parish.

In answer to the interrogatories propounded to him in the garnishment proceedings, Conrad stated that he had milled for John R. Broussard 169 sacks of rice at his mill in New Iberia, which he held subject to an order of delivery in favor of R. C. Banta of Jeanerette, given to him by John R. Broussard, dated November 2, 1927.

After obtaining the issuance of garnishment process against Conrad in his original demand for a writ of attachment, plaintiff, in a supplemental petition, made R. C. Banta a garnishee, alleging he had reasons to believe that he was in debt to John R. Broussard, or had property or effects in his possession belonging to Broussard. In answer to the interroga-tories addressed to him, Banta admitted he had in his possession a Deering McCormick tractor, a disk, and one harrow belonging to Broussard, and answered "no" as to any other property. Thereupon plaintiff upon proper allegations obtained a rule on Broussard, Banta and Conrad ordering them to show cause why the order for the delivery of the rice to Banta by Broussard should not be declared a simulation, or, in the alternative, annulled as a fraudulent preference in favor of Banta over the other creditor of Broussard, and, if not a simulation or fraudulent preference, why it should not be decreed that the rice had been seized before its delivery by Broussard to Banta. The rule was made absolute by decreeing that the transfer of the rice by Broussard to Banta was a fraudulent preference, and ordering Conrad to deliver it to the sheriff under the seizure.

Broussard made no defense, and judgment by default was rendered against him on the note, perpetuating the attachment. The only appearance made by Conrad was in answer to the interrogatories in which he declared he was holding the rice for Banta under the order of Broussard. Banta is the only appellant.

The first contention of counsel for appellant is that Banta and Conrad, the other garnishee, had no interest in common and could not be joined as defendants. It is evident from the answer of Conrad to the interrogatories that he was holding the property for Banta, and that he had no interest whatsoever in the case. The only parties in interest were Broussard and Banta, who could well be joined under the charges of simulation, fraudulent preference, and want of delivery of the rice prior to the seizure, which were leveled against them in the petition filed by plaintiff for the issuance of the rule.

In their brief, counsel' for defendant, in referring to plaintiff, say:

"In reality he instituted a revocatory action by supplemental petition against a garnishee, and is attempting to try by supplemental petition as a summing process against two defendants, who were not made defendants in the original .suit."

This means, if we appreciate the contention correctly, that plaintiff could not attack the transfer of the rice by rule upon the allegations of his petition above referred to, but, for the relief sought, should have proceeded by a revocatory or direct action. Plaintiff, according to that contention, had no right to attack this transfer collaterally under a proceeding of that character. Counsel, in support of this contention, refer to Act 46 of 1886, wherein it is provided that in all cases where personal property is seized and is claimed by a third opponent, the seizing creditor may be allowed in his answer to the third opposition to allege and prove his title fraudulent, and the court shall try and decide the issue thus made. Although Conrad, the other garnishee, had declared that he was holding the rice for Banta, the purpose of Banta in withholding from making any claim to the property by third opposition was evidently to force plaintiff to institute suit against him by a separate and independent revocatory action. Banta would simply remain quiescent until plaintiff had thus resorted to a new suit for the decision of an issue fully presented herein in the proceeding by rule, and wherein the matter can be equitably, legally and fairly settled. The law abhors such circuity of action, and does not countenance such useless and vain proceedings.

The question here presented was met in the case of First National Bank vs. Lagrone (La. Sup.) 117 So. 741. In that case, under writs of fieri facias, Mrs. Edenborn was made a garnishee. The banks therein undertook to levy upon 250 shares of stock in the Colfax Lumber & Creosoting Company. In answering the interrogatories, Mrs. Edenborn, garnishee, admitted that she held 50 shares of stock which had been issued ' in the name of Mrs. Lagrone, wife of the judgment debtor, Lagrone, and that she. had in her possession 200 shares in the name of J. M. Dowden. The banks, plaintiffs in the case, obtained a rule upon Mrs. Edenborn, garnishee, for her to show cause why the 250 shares of stock should not be surrendered to the sheriff, to be sold to satisfy the banks' judgments. Here the relief asked was that the order for the delivery of the rice to Banta, garnishee, be declared null, or annulled, and that it be delivered subject to seizure under the attachment. In this respect the demands in the two cases, if not practically identical, are at least quite similar.

In their petition in the rule, it was also alleged that the stock standing in the name of Mrs. Lagrone had been transferred by her husband without consideration by a fraudulent dation en paiement, which was null, not only because it was made without consideration, but also because the stock had never been delivered to Mrs. Lagrone—in substance and character, the same averments which appear in this case in the rule issued against the garnishees. Mrs. Lagrone, after excepting to the jurisdiction of the court, which is not a feautre of this case, pleaded that the banks' proceeding was a collateral attack on the dation en paiement transferring the stock to her, and that the banks had no cause or right of action, which is precisely the attitude of defendant Banta in the present action.

In summing up the contentions, Chief

Justice O'Niell, the organ of the court, said:

"The purpose of citing Mrs. Lagrone was not to obtain a personal judgment against her. The purpose was merely to determine the ownership of the stock, which was seized in the possession, virtually of the insolvent debtor. For that purpose it was not necessary for the banks to bring a revocatory action at the domicile of Mrs. Lagrone."

Here the object of the rule was merely to have the ownership of the rice determined, which had been placed in the hands of Conrad, garnishee, under an order of delivery alleged to have been given to cover up either a pure simulation, a fraudulent preference, or a transfer lacking the essential requisite of delivery before seizure.

We are of the opinion that as the defendant Broussard, Banta and Conrad, garnishees, were all brought into court under the rule, that the issues therein presented were legitimately before the court, and could be passed upon without the useless formality of compelling plaintiff to resort to a separate proceeding under the revocatory action, which was, prior to the enactment of Act 46 of 1886, an essential requirement in suits of this character.

### ON THE MERITS

The district judge found that at the date of the pretended transfer of the rice to Banta, the debts Broussard owed amounted in the aggregate to the sum of $2,200. Counsel for defendant say that if Broussard owed the Smardon note, his total liabilities were about $2,100. We do not see why his obligation represented by the Smardon note should be eliminated from the debts Broussard owed at that time, which show that he was in debt at about the amount fixed by the district judge.

Counsel for Banta cite C. C. 1985, which says:

"By being in insolvent circumstances is meant, that the whole property and credits are not equal in amount, at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount."

It was therefore incumbent upon Banta who had bought from Broussard, the alleged insolvent, to show that he had property at a fair appraisement, at least equal in amount to his debts.

At the time of the transfer Broussard was the owner of a McCormick Deering tractor, one Fordson tractor, one disc, one harrow, and the 164 sacks of rice in dispute. This machinery, it may be appropriate to remark, had been in use for some time. He also had an automobile, but this auto was in Texas where Broussard had removed. He said he paid cash for that auto. His own letters to Himel and Le Bourgeois show that he could not pay his debts, as also appears from the facts of the case, which make it impossible to believe that Broussard had acquired this auto for a cash consideration.

Banta says this McCormick tractor had been in use for two years, but fixes its value at $850, and upon which rested a chattel mortgage for $500. He placed no estimate on the Fordson tractor, disc and harrow. The only appraisement of the last-mentioned machinery we find in the record was that made for the sale under the seizure by Le Bourgeois. In the appraisement for the sale, the Fordson tractor is listed at $250, the harrow at $15, and the disc at $75. It also appears

that at the sheriff's sale under the attachment, the Fordson tractor, although offered at two-thirds of its appraised value, was not sold for lack of a bidder, and that the disc and harrow, which had been appraised at $90, were bought by plaintiff bank, seizing creditor, for $60. The rice in contest was not worth on the market over $2.50 per sack, the total value for the 164 sacks being about $410. Counsel for defendant would also have us include in that valuation $1,000 or more in cash, which they contend Broussard had in his possession at the time. This, according to Banta, he was supposed to have from money realized from the sale of rice belonging to Banta. It was for the price of the rice which Broussard had sold that Banta had taken in payment the rice under seizure, if we are to believe him. In making his estimate of Broussard's assets, Banta includes the value of the rice in contest and the $1,000 or more above mentioned and referred to in counsel's brief. If Broussard gave the rice in part payment of his debt for Banta's rice he had sold, the value of that lot of 164 sacks could not be figured upon in the calculation made in support of his solvency. Including the rice seized as an asset, the tangible property belonging to Broussard equaled about $840, the amount which was found by the trial judge.

The court in its reasons for judgment says:

"Banta knew Broussard's inability to pay his debts, and of his insolvency, at the time of the transfer."

In addition to the facts to which we have referred and to the foregoing statement of the court, there are letters in the record from Broussard which show that he was unable to pay his debts. There is no doubt that he was in a state of insolvency, which however, he denies in his testimony taken under commission.

Banta testifies that Broussard had sold his (Banta's) rice for $2,703.70; that after paying expenses to gather the crop, and paying Barras, a helper, Broussard gave him a check for $850, leaving a balance of $1,121.45 due him by Broussard. It is in part payment of that amount that he says he took the rice in dispute, which had been milled at Conrad's Mill in New Iberia. He says his settlement with Broussard was made at his home, which the record shows was in Jeanerette, La. According to Banta, he took 232 sacks in payment from Broussard at the mill, although the evidence shows that Broussard had only 164 or 169 sacks there; and, according to Banta's evidence, this was all Broussard had received for his share after settling with Barras, who had assisted in harvesting the crop. Banta says he took the rice at $3 per sack, although it is shown that rice was not worth at the time over $2.50 a sack. The deal according to Banta, was effected at his home at Jeanerette. It does not appear that he had inspected that rice, and had seen to its quality before taking it at a price in excess of its market value, and from a debtor he claims had some $1,100 in cash at that time, and who was perfectly solvent. With all this pretended faith in the solvency and also integrity of his debtor, Banta says, however, in referring to Broussard:

"I wanted to get what was mine; he might not be able to pay me."

It is extremely doubtful that Broussard was in debt to Banta for the amount claimed by him in any sum whatsoever. The transaction seems to have been a pure simulation, which had been carried out to defraud plaintiff bank. If not a simu-

creditor, to the injury of his other creditors.

The proof shows that Broussard and Banta had been close associates in business for three years prior to the transfer in question. It also appears that while Broussard was sick in New Orleans, Banta had obtained an extension of 30 days on the note sued upon, thus prolonging its maturity to November 1, 1927; and strange to say, just one day prior to the date of the pretended transfer on November 2, 1927, Broussard, according to Banta, had been given a free hand in selling the latter's rice crop, and Banta, who had obtained an extension of time on Broussard's rent note, was aware of a debt Broussard owed the International Harvester Company, from all of which, and other circumstances of the case unnecessary to mention, we must conclude that Banta knew of Broussard's insolvency when he claims to have acquired the rice. Banta therefore obtained a preference from Broussard, known to him as being insolvent, which lays the contract for the transfer of the rice open to annulment. C. C. 1983; Lothrop vs. Goudeau, 142 La. 348, 76 So. 794; Grossman's Sons vs. Chachere, 136 La. 671, 67 So. 545; Ventrilla vs. Tortorice, 160 La. 522, 107 So. 390; Swain vs. Kirkpatrick Lumber Co., 143 La. 30, 78 So. 140, 20 A. L. R. 665.

And even if Banta did not have positive knowledge that Broussard was insolvent, the circumstances are such that they cannot fail to produce the impression that he was aware of it, and this suffices to lay the contract open to annulment under article 1983, Civil Code; De Blanc vs. Martin, 2 Rob. 38; J. Grossman's Sons vs. Chachere, 136 La. 666, 67 So. 545.

The judgment is therefore affirmed.

For opinion on rehearing, see 10 La. App. 801.