## CONSOLIDATED COMPANIES, Inc., v. COLLETTE et al.

### No. 1165.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

L. L. Perrault, of Opelousas, for appellant.

A. V. Pavy, of Opelousas, for appellee.

LE BLANC, Judge.

This is a suit brought by the plaintiff to set aside a chattel mortgage on an automobile, given to secure a debt of $500, as being a fraudulent simulation, or, in the alternative, a fraudulent preference. The two defendants are Mitchel Forty, a judgment debtor of the plaintiff who had mortgaged the automobile five months prior to the date on which plaintiff had obtained judgment against him, and Nick Collette, the mortgagee who claims to have advanced him $500 in different amounts at different times.

Forty was engaged in a small mercantile business at Bayou Current in the parish of St. Landry. During the years 1929, 1930, and 1931, the plaintiff had sold him groceries and had let him run up a bill amounting to $302.14, on which he made two payments, one in October and the other in December, 1931, which reduced it to $221. After repeated efforts to make further collection without avail, plaintiff obtained judgment on the unpaid balance on February 10, 1932. Forty did not contest the suit, and judgment was rendered against him by default.

The mortgage by Forty to Collette, which is herein attacked, was executed before Paul W. Lafleur, notary public, at Melville, La., on September 14, 1931.

The lower court rendered judgment rejecting the plaintiff's demands, and it has appealed.

Collette is married to Forty's sister, and Forty married Collette's sister, and besides they are very close and intimate friends. Indeed it is this intimate relationship which may have given rise to the suspicion that the mortgage transaction between them was entered into with the purpose of frustrating any of Forty's creditors in an attempt to collect a claim against him.

■ In cases of this character, the party attacking an authentic instrument usually finds it difficult to obtain and present direct proof of the fraud he alleges and has to rely for the most part on circumstantial evidence to support his cause. Such proof necessarily has to be sufficiently convincing to overcome the presumption of validity which attaches to contracts solemnly entered into before a notary public. In this case, the proof most strongly relied on by the plaintiff arises from the circumstance of relationship between the parties to the act, of the mortgagor's natural impulse to save the only property he had left from execution, and of the mortgagee's financial inability to have made the advances in money as represented by the mortgage.

■ There are two issues presented: First, Was the act of mortgage a fraud devised for the sole purpose of covering property and saving it from seizure of creditors, with no consideration having passed from the mortgagee to the mortgagor? and, second, conceding that the money was actually advanced, Was not the mortgagor at the time, to the knowledge of the mortgagee, in insolvent circumstances? On the second issue it is to be noted that plaintiff had not only to show that the mortgagor was insolvent at the time the mortgage was granted, but it had the burden of showing, moreover, that the mortgagee knew that he was insolvent.

The district judge, in his written reasons for judgment, refers to the defendants as being "very ignorant and illiterate," and a reading of their testimony, in our opinion, justifies such conclusion. We think the same might be said of Lena and Josephine Collette, sisters of Nick Collette, who both testified in the case as witnesses for the defendants.

■ The testimony is to the effect that Collette's father died when he was but a lad, and that he had two brothers, Sam and Joe. A relative of the family, Sam Diesi, attended to their business, and testifies that, at the request of their mother, he deposited some $1,000 for them in a savings account in the Louisiana National Bank of Baton Rouge. They were big enough to assist in farm work on the plantation of R. A. Gordon, where they made good crops and were successful in coming out ahead each year. Diesi says that, "as close as he could tell," the three boys in 1922 each had about $800 in the Louisiana National Bank. In this respect, his testimony is corroborated to some extent by that of Mr. A. L. Ledoux, who was manager of the plantation which then belonged to the estate of Mr. Gordon. This last witness says, moreover, that this money had been deposited with the understanding that it could not be withdrawn by any of the boys until he was married. He says that they made money each year, and, speaking of Nick, especially, he gives the impression that he was of an extremely frugal nature. The evidence shows that after he married he continued to farm as a share tenant on the same plantation where he had lived all his life, and, if he did not make any large sums of money each year, at least did not lose any. Certain it is that he did not squander what he had. The proof is positive besides that in 1928 he had on deposit in the Merchants' & Farmers' Bank of Melville, La., the sum of $300 which he withdrew on August 21, 1931. It is also shown that he owned two mules and a wagon, which he says his mother gave him, and an automobile which he bought on time payments.

Collette and Forty both testify that the transactions between them included advances of $200 in cash in 1929, a like amount in 1930, and $100 in 1931. It was when this last sum was advanced that they decided that the entire debt should be secured by the chattel mortgage on Forty's automobile. The first loans of $200 each were made to enable Forty to pay maturing installments on the purchase price of the very automobile which he later mortgaged to Collette, and proof in the form of two checks in the sum of $198.30 each, drawn by Forty on the Merchants' & Farmers' Bank of Melville, to the order of General Motors Acceptance Corporation, holder of Forty's notes, one dated November 20, 1929, and the other March 6, 1930, gives some form of support to the testimony concerning these two transactions. Besides, Collette's sisters, Lena and Josephine, both swear that they were present and witnessed them both. There is nothing to justify the inference that these women were not telling the truth except it be because of their relationship, and this we do not deem sufficient to impugn their testimony.

The remaining $100 included in the mortgage note was loaned shortly before the execution of the act of mortgage in September, 1931. Forty testifies that this amount was borrowed to run his business and also to assist in supporting his family; that Collette had the money available to advance this amount can be inferred readily enough from the fact that the month before he had withdrawn $300 from the Merchants' & Farmers' Bank at Melville. His sisters witnessed this transaction also, and besides Sam Diesi swears that he was present. There are some discrepancies in the testimony of all these witnesses, but not on any material points, as we look upon them, and besides, considering their standard of intelligence as well as their apparently limited understanding of what was being asked them as witnesses, we think such differences as appear were to be expected.

Counsel for plaintiff makes much of the point that the advances were made in cash taken from a trunk where Collette says he kept his money, without any record having been made of the loans. Considering the peculiarities of these people in general and of the entire lack of business ability of the parties to these transactions in particular, we find nothing unusual in this, and moreover it is just another circumstance which we do not believe is strong enough to detract from the facts which otherwise indicate that Collette did have the money to advance Forty and that he did make the loans as they both say they were made.

■ We come now to the second issue which the case presents; that is, whether there was a fraudulent preference of a creditor in the granting of the mortgage that is attacked, and, to determine this point in favor of plaintiff, it must appear, as already stated, that Collette, the mortgagee, knew that Forty was insolvent, assuming that he was, at the time of the execution of the mortgage. C. C. art. 1984.

Counsel for plaintiff refers to some rather strong language in the case of Johnson v. Mayer, 30 La. Ann. 1203, to guide us in weighing the circumstances that appear in this case. He also cites the case of Bank of Baldwin v. Broussard, 10 La. App. 404, 119 So. 567, decided by this court, in which it was held that, although there was no positive knowledge of the insolvency, the circumstances were such that they could not fail to convey the impression that such knowledge existed.

In this case it is shown that Forty had been, for several years before the mortgage was executed, running a small mercantile establishment, assisted by his wife. Besides this business, he farmed, and in 1931, when the mortgage was given on the automobile, he was cultivating between 35 and 40 acres of land, owned two mules and farming imple-

ments. It is true that this store business was declining in that year, but even at that plaintiff kept an active account with him as late as the month of September, and their statement shows that he made payments thereon in October and December of that year. Although plaintiff did begin to press him in March, 1931, to put his account in better shape than it was, they apparently did not find it necessary to file suit against him until January 11, 1932, which was four months after the mortgage to Collette had been executed. Besides the plaintiff and Collette, Forty seems to have had but one other creditor to whom he owed $75. Whether this was due at the time the mortgage was executed or not does not appear from the record. So then, on September 14, 1931, the date of the mortgage, the status, as far as the record shows, was that Forty had a small stock of merchandise in his store, was still buying more from the plaintiff, had 35 to 40 acres of land cultivated in crops, owned two mules and some farm implements, and all that he owed in addition to the loans made by Collette was the plaintiff's account, on which he made two rather substantial payments in October and December. It may be that all the assets he owned were not sufficient to meet his liabilities, and in that sense he may be said to have been insolvent, but in our opinion there is nothing to justify the conclusion that on that day and at that time Collette was aware of such insolvency and took advantage of his relationship to obtain a fraudulent preference as a creditor.

We believe that the district judge has correctly resolved the testimony on both issues presented in the case. At any rate, we are not prepared to say that he has fallen into manifest error, and therefore will affirm the judgment.

Judgment affirmed.